UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RICHARD JOHNSON,

        *Plaintiff*,

    v.

INTEL CORPORATION,

        *Defendant*.

Civil Action No.
1:25-cv-10193-LJL

ORAL ARGUMENT REQUESTED

**DEFENDANT INTEL CORPORATION'S
MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT**

Case 1:25-cv-10193-LJL    Document 27    Filed 05/04/26    Page 2 of 31

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND.............................................................4

I.      Intel and Intel's Website. ...........................................................................................4

II.     Plaintiff's Allegations. ................................................................................................7

III.    The Parties' Conferral. ................................................................................................8

IV.     The URLs Plaintiff Has Identified As Being At Issue..............................................10

STANDARD OF REVIEW ...................................................................................................11

ARGUMENT ........................................................................................................................13

I.      INTEL IS NOT SUBJECT TO PERSONAL JURISDICTION ON PLAINTIFF'S

        CLAIMS. ...................................................................................................................13

        A.      Intel Is Not Subject to General Jurisdiction in New York. ...................................13

        B.      Intel Is Not Subject to Specific Personal Jurisdiction on Plaintiff's Claims. ........14

II.     THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS

        SUIT............................................................................................................................17

III.    INTEL'S WEBSITE IS NOT A PUBLIC ACCOMMODATION...................................20

IV.     IN THE ALTERNATIVE, THE COURT SHOULD DECLINE

        SUPPLEMENTAL JURISDICTION OVER THE STATE-LAW CLAIMS

        (COUNTS II-IV)..........................................................................................................22

V.      THE COURT SHOULD DISMISS THE CLAIM FOR DECLARATORY

        RELIEF (COUNT V)...................................................................................................23

CONCLUSION......................................................................................................................24

i

**TABLE OF AUTHORITIES**

Page

**CASES**

*Al-Ahmed v. Twitter, Inc.*, 553 F. Supp. 3d 118 (S.D.N.Y. 2021) ...........................................12, 15

*American Civ. Liberties Union v. Clapper*, 785 F.3d 787 (2d Cir. 2015) ....................................18

*Beeney v. InSightec, Inc.*, 2014 WL 3610941 (S.D.N.Y. July 7, 2014)........................................12

*Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007) ......................................................14

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255 (2017).....................................13, 14

*Brzak v. United Nations*, 597 F.3d 107 (2d Cir. 2010) ..................................................................22

*Calcano v. Cole Haan LLC*, 2021 WL 849434 (S.D.N.Y. Mar. 5, 2021) ....................................12

*Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68 (2d Cir. 2022) ..................................12, 13, 18, 19

*Camacho v. Northeastern Univ.*, 2019 WL 5190688 (S.D.N.Y. Oct. 15, 2019)....................11, 16

*Camarillo v. Carrols Corp.*, 518 F.3d 153 (2d Cir. 2008) (per curiam).......................................20

*Carparts Distrib. Ctr., Inc. v. Auto. Wholesaler's Ass'n*, 37 F.3d 12 (1st Cir. 1994) ..................22

*Carter v. HealthPort Techs., LLC*, 822 F.3d 47 (2d Cir. 2016).....................................................12

*Conrad v. Latido Mitu Holdings, LLC*, 2021 WL 5909656 (S.D.N.Y. Dec. 10, 2021) ................15

*Creative Photographers, Inc. v. Grupo Televisa S.A.B.*,
   763 F. Supp. 3d 618 (S.D.N.Y. 2025)................................................................................11, 14

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ..............................................................................13

*Diaz v. Kroger Co.*, 2019 WL 2357531 (S.D.N.Y. June 4, 2019).................................................10

*Doe v. Mut. of Omaha Ins. Co.*, 179 F.3d 557 (7th Cir. 1999) .....................................................22

*Edwardo v. Roman Cath. Bishop of Providence*, 66 F.4th 69 (2d Cir. 2023) ...............................13

*Feltenstein v. City of New Rochelle*, 2019 WL 3543246 (S.D.N.Y. Aug. 5, 2019) ......................20

*Fernandez v. Buffalo Jackson Trading Co.*, 2025 WL 1101478 (S.D.N.Y. Apr. 14, 2025) .....8, 19

*Fernandez v. Gainful Health, Inc.*, 2025 WL 3538339 (S.D.N.Y. Dec. 10, 2025) ...................3, 21

*Ford v. Schering-Plough Corp.*, 145 F.3d 601 (3d Cir. 1998) ................................................21, 22

ii

Page

Cases—continued:

*Frawley v. Med. Mgmt. Grp.*, 2022 WL 17812697 (S.D.N.Y. Apr. 25, 2022)..............................18

*Gil v. Winn-Dixie Stores, Inc.*, 993 F.3d 1266 (11th Cir. 2021),
     *opinion vacated on reh'g on mootness grounds*, 21 F.4th 775 (11th Cir. 2021).....................21

*Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122 (2d Cir. 2014) ..........................................13

*Guglielmo v. JEGS Automotive, Inc.*, 2021 WL 1026168 (S.D.N.Y. Mar. 17, 2021)....................17

*Keene Corp. v. Fiorelli (In re Joint E. & S. Dist. Asbestos Litig.)*,
     14 F.3d 726 (2d Cir. 1993).........................................................................23

*Klein & Co. Futures v. Bd. of Trade of N.Y.*, 464 F.3d 255 (2d Cir. 2006)..................................22

*KM Enters., Inc. v. McDonald*, 2012 WL 4472010 (E.D.N.Y. Sept. 25, 2012),
     *aff'd*, 518 F. App'x 12 (2d Cir. 2013)......................................................................23

*Krist v. Kolombos Rest. Inc.*, 688 F.3d 89 (2d Cir. 2012) ..............................................20

*LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471 (2d Cir. 2009)..................................13

*Lewis v. Samsung SDI Co.*, 2025 WL 1826471 (S.D.N.Y. July 2, 2025).......................................12

*Licci ex rel. Licci v. Lebanese Canadian Bank*, 732 F.3d 161 (2d Cir. 2013)...............................14

*Martinez v. MyLife.com*, 2021 WL 5052745 (E.D.N.Y. Nov. 1, 2021) .......................................21

*Mejia v. High Brew Coffee Inc.*, 2024 WL 4350912 (S.D.N.Y. Sept. 30, 2024)...........................23

*Mendez v. Apple Inc.*, 2019 WL 2611168 (S.D.N.Y. Mar. 28, 2019) .........................................19

*Minden Pictures, Inc. v. Grupo Televisa, S.A.B.*, 738 F. Supp. 3d 458 (S.D.N.Y. 2024) .............11

*Monegro v. St. Insider Dot Com Inc.*, 2022 WL 445797 (S.D.N.Y. Feb. 11, 2022) .....................23

*Nicosia v. Amazon.com, Inc.*, 834 F.3d 220 (2d Cir. 2016).............................................18

*Ogbolu v. Trs. of Columbia Univ.*, 2022 WL 280934 (S.D.N.Y. Jan. 31, 2022)...........................20

*Parallel Networks, LLC v. Netflix, Inc.*, 2009 WL 2996722 (E.D. Tex. Aug. 24, 2009) .............16

*Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006 (6th Cir. 1997).........................................22

*Rizzi v. Hilton Domestic Operating Co.*, 2019 WL 5874327 (E.D.N.Y. July 18, 2019)...............19

iii

Page

Cases—continued:

*Robles v. Domino's Pizza, LLC*, 913 F.3d 898 (9th Cir. 2019) ....................................................21

*Sookul v. Fresh Clean Threads, Inc.*, 754 F. Supp. 3d 395 (S.D.N.Y. 2024)....................12, 20, 21

*Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348 (S.D.N.Y. 2020)....................................................17

*SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161 (S.D.N.Y. 2015),
    *aff'd*, 882 F.3d 333 (2d Cir. 2018)...................................................................................11

*Stephan v. Babysport, LLC*, 499 F. Supp. 2d 279 (E.D.N.Y. 2007) ...............................................16

*Sumlin v. New York Beer Co., LLC*, 2025 WL 1703067 (S.D.N.Y. June 18, 2025).................3, 20

*Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792 (S.D.N.Y. 2015),
    *aff'd*, 660 F. App'x 43 (2d Cir. 2016)..................................................................................11

*Toretto v. Donnelley Fin. Sols., Inc.*, 583 F. Supp. 3d 570 (S.D.N.Y. 2022) ................................23

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ..................................................................18, 19

*Tucker v. Firstlight Home Care Franchising, LLC*,
    2019 WL 2996694 (S.D.N.Y. June 10, 2019),
    *R. & R. adopted*, 2019 WL 2992222 (S.D.N.Y. Jul. 9, 2019) .................................................15

*Wahab v. Surya Nature, Inc.*, 2025 WL 872112 (S.D.N.Y. Mar. 20, 2025) .......................8, 19, 23

*Warner Bros. Ent. Inc. v. Ideal World Direct*, 516 F. Supp. 2d 261 (S.D.N.Y. 2007)..................16

*Weyer v. Twentieth Cent. Fox Film Corp.*, 198 F.3d 1104 (9th Cir. 2000) ...................................21

*Winegard v. Newsday LLC*, 556 F. Supp. 3d 173 (E.D.N.Y. 2021) ........................................20, 21

*Ye Olde Time Keepers, Inc. v. C.R. Martin Auctioneers, Inc.*,
    2018 WL 1832930 (E.D.N.Y. Apr. 17, 2018) .......................................................................17

*Zaitsev v. Salomon Bros., Inc.*, 1994 WL 361463 (S.D.N.Y. July 8, 1994),
    *aff'd*, 60 F.3d 1001 (2d Cir. 1995)........................................................................................14

## CONSTITUTION, STATUTES, AND RULE

U.S. Constitution
    art. III ...............................................................................................................3, 17, 18, 19
    amend. XIV.......................................................................................................................14

28 U.S.C. § 1367.............................................................................................................................22

Page

Constitution, Statutes, and Rule—continued:

42 U.S.C. § 12181 *et seq.*.................................................................................... *passim*

Federal Rule of Civil Procedure 12 .................................................................11, 12

N.Y. Civil Rights Law § 40 *et seq.* .........................................................................20

N.Y. Exec. Law § 292 *et seq.* .................................................................................20

N.Y.C. Admin. Code § 8-107 ............................................................................20, 23

New York Civil Practice Law and Rules § 302....................................................14, 15

**INTRODUCTION**

Plaintiff Richard Johnson is a visually impaired person who uses screen-reading software to access the internet.  Since December 2025, he has filed five suits in this District—including this one against Defendant Intel Corporation—asserting claims for alleged violations of website accessibility requirements under Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181-12189 ("ADA"), and similar state laws.  These suits all rest on substantially the same boilerplate allegations, and with the exception of an irrelevant insert added after Intel moved to dismiss, the First Amended Complaint ("FAC" or "Complaint") is materially identical to another suit initiated the same day by Plaintiff's counsel for a different client, one of dozens of such cases recently filed by that counsel.  Plaintiff and his counsel are free to file these seriatim strings of ADA website suits, notwithstanding the statements by many federal courts criticizing that practice. What they are not allowed to do is to rest a jurisdictional theory on boilerplate allegations cribbed from other complaints that are false as to Intel and Intel's website.  The Court should dismiss this action for lack of personal jurisdiction and subject matter jurisdiction; in any event, Plaintiff states no claim because www.intel.com is not a "public accommodation."

As to personal jurisdiction, Plaintiff again alleges that Intel "conducts substantial business" through its website, "which targets and solicits sales" from New York residents and "generate[s] significant revenue from online sales" to New Yorkers, "including the very products" he wanted to buy.  FAC ¶¶ 18-21 (alleging "millions of dollars in monthly online revenue").  *Plaintiff realleges this unchanged despite knowing that these are falsehoods, as Intel generates _no_ revenue from _any_ online processor sales.  See* ECF No. 22 ("Prior MTD") at 4-5.  He alleges that he wanted to buy two specific products on Intel's site, but that barriers in "Intel's checkout workflow" "prevented [him] from completing [those] transactions."  FAC ¶ 35.  He says he was "forced to abandon transactions" and that he was unable to "complet[e] a single transaction," but "inten[ds]

1

to return and purchase" these products once his claims are addressed. *Id.* ¶¶ 45-49. *But those propositions, also realleged unchanged, are equally fabricated.* Intel's website *has no* "checkout workflow" that could have allowed Plaintiff to "complet[e] [these] transactions," because Intel is a component manufacturer that does not sell microprocessors directly to consumers. It is *impossible* to "complete a transaction" on Intel's website for the products Plaintiff says he tried to buy. As such, he *cannot* have been "forced to abandon" such transactions, nor can he "return and purchase" those products in the future. Intel "generate[s]" *no* "revenue from online sales" to New Yorkers related to "th[os]e very products" (let alone "significant revenue from online sales"), *because Intel does not sell those microprocessor products directly to the public*.

Plaintiff knew all this—his counsel expressly acknowledged as much—before Intel's prior motion to dismiss. *See* Prior MTD at 8-9. Yet not only did Plaintiff refuse to withdraw these allegations, requiring Intel to file that motion, he now doubles down by realleging those falsehoods unchanged. In a supposed effort to address Intel's prior motion to dismiss, Plaintiff now alleges the presence of "Buy Now" and "Where to Buy" buttons on Intel's website that serve as "transactional gateways" and "purchase pathways," and therefore that Intel transacts business in New York through its website. FAC ¶¶ 36-44. But the screenshots attached to the original complaint, and incorporated by reference into the operative Complaint, show nothing of the supposed e-commerce functionality that Plaintiff alleges, nor do any of the other pages that Plaintiff has recently identified in conferral (though not cited in the Complaint). Plaintiff's "transactional gateway" and "purchase pathway" jargon boils down to nothing more than that Intel's website includes links to third-party sites such as Amazon that sell standalone Intel processors. As a matter of law, the inclusion of hyperlinks on a website to some *other* place where a product can be purchased does not constitute the transaction of business in New York. Because

2

Plaintiff's claims do not arise from, arise out of, or relate to any business that Intel transacts in New York, Intel is not subject to specific personal jurisdiction on those claims.

Nor does the Court have subject matter jurisdiction over this case, for many of the same reasons. Although Plaintiff contends that he was stymied in his efforts to consummate a transaction on Intel's website, *no such transaction can be consummated by anyone, regardless of visual impairment, on that site*. Plaintiff therefore fails to plead a concrete and particularized injury and so lacks Article III standing.

Jurisdictional defects aside, Plaintiff fails to state a claim. The ADA applies only to a "place of public accommodation," and because Intel—a component manufacturer—operates no bricks-and-mortar location in New York (or anywhere) to sell its products, its website is not a "public accommodation." This is an issue on which there is a split of authority in this District, as the Court noted in *Sumlin v. New York Beer Co., LLC*, 2025 WL 1703067, at *3 (S.D.N.Y. June 18, 2025), and the Court has not stated a view on that split. The better reasoned conclusion is that "the ADA does not cover standalone websites." *Fernandez v. Gainful Health, Inc.*, 2025 WL 3538339, at *2-3 (S.D.N.Y. Dec. 10, 2025) (examining "threshold question" of whether such a website "qualifies as a 'public accommodation'"). Because the state laws at issue track the federal standard, this dooms those claims too, which the Court should similarly dismiss with prejudice; in the alternative, the Court may decline to exercise supplemental jurisdiction over those claims after dismissing Plaintiff's federal claim. Lastly, the Court should dismiss Plaintiff's claim for declaratory judgment, which cannot proceed without a viable underlying substantive claim.

The Court should dismiss the Complaint.

3

**FACTUAL AND PROCEDURAL BACKGROUND**

I.      **Intel and Intel's Website.**

Intel designs, manufactures, and sells microprocessors.    Declaration of Megan Shaughnessy ("Shaughnessy Decl.") ¶¶ 3-4.[1]  Microprocessors are components of computing products—the "brain" of the computer, basically.  *Id.* ¶ 4.  Most microprocessors are used as the central processing unit (the "CPU") for a computing product; certain microprocessors such as graphic processing units ("GPUs") may serve specialized functions.  *Id.*[2]  Intel is a Delaware corporation, and its principal place of business is in California, where it is headquartered and where its CEO and other senior officers work.  *Id.* ¶ 3; FAC ¶ 18.

Because a CPU or a GPU is a component of a larger device, almost all Intel CPUs and GPUs are sold to other major computing companies.  Shaughnessy Decl. ¶¶ 4-7.  Those buyers fall into two groups.  *First*, "OEMs" (original equipment manufacturers) like Dell, HP, or Lenovo, which build devices such as laptops and desktop computers, buy Intel components to install into those finished computing products.  *Id.* ¶ 6.  *Second*, "cloud" companies like Amazon and Microsoft, which use Intel microprocessors for their cloud services (i.e., in "server farms"), buy Intel components to install in those servers.  *Id.* ¶ 7.  The small number of hobbyists and specialists who buy individual Intel microprocessor components in order to build their own computing products do so through third-party retail channels such as Best Buy or Staples.  *Id.* ¶ 8.  Intel does not sell CPUs or GPUs directly to the public; not only are such transactions unavailable on Intel's

---

[1] As described *infra*, this evidence is properly considered on a motion raising jurisdictional defects. Because the First Amended Complaint is materially unchanged, Intel has refiled the same declaration from Ms. Shaughnessy as was attached to its prior motion to dismiss.

[2] Plaintiff's allegations in this case pertain to his supposedly frustrated attempts to buy an Intel Core Ultra 9 Processor (Series 2), which is a CPU, and an Intel Arc B580 Graphics Card, which is a GPU, on Intel's website.  FAC ¶¶ 33-49.  *See infra* at 7-8.

4

website, Intel operates no "bricks and mortar" site anywhere (New York included) where a retail consumer can buy a CPU or GPU directly from Intel.  *Id.* ¶¶ 5, 8-9.

Intel operates a website ([www.intel.com](www.intel.com)).  *Id.* ¶ 9.  Intel's website supplies information to the public both regarding Intel's products and on many topics relevant to computing more generally.  *Id.*  But a consumer cannot purchase a CPU or GPU from Intel on that website, as Intel does not make microprocessor sales (and thus generates no revenue from such sales) on that site. *Id.* ¶¶ 5, 8-9.  This is not hidden information; Intel says so expressly on its website:

*See Does Intel Sell Direct to the Customer?*, Intel, [https://www.intel.com/content/www/us/en/support/articles/000015037/programs.html](https://www.intel.com/content/www/us/en/support/articles/000015037/programs.html) (last visited May 4, 2026).  This information is also not unknown to Plaintiff, whose counsel expressly acknowledged, during the conferral preceding Intel's prior motion to dismiss, that "it does not appear that Intel sells any products on its website." Ex. 1 (R. Schonfeld email, Jan. 14, 2026).[3]

---

[3] All exhibits are to the Declaration of David S. Kurtzer-Ellenbogen ("Kurtzer Decl."). Correspondence between counsel is redacted to remove discussion regarding potential resolution. As discussed below—and as Plaintiff's counsel plainly knew when acknowledging that Intel does not "sell[] any products on its website"—certain pages on Intel's site contain hyperlinks to third-party retailers such as Amazon.

Intel takes accessibility seriously.  For more than a decade, Intel has maintained full-time technical personnel specifically tasked on accessibility issues, including with respect to Intel's website.  Shaughnessy Decl. ¶ 10.  Intel has been recognized by Disability:IN as one of the best places to work for people with disabilities and has received the maximum score of 100 in the Disability Equality Index for nine straight years.  *Id.* ¶ 11.  Intel's Corporate Accessibility Policy underscores the company's commitment to promoting a culture of accessibility.  *Id.*  In mid-2025, months before Plaintiff filed this lawsuit, Intel began a project to rebuild the entirety of its website, including in partnership with accessibility experts.  *Id*. ¶ 12.[4]  In connection with this transition, Intel has already begun to release updated and revised pages and content.  *Id.*  Intel's website is expected to be fully updated by the end of 2026.  *Id.*

In any event, the Complaint identifies only two screenshotted pages purportedly at issue in this suit, neither of which includes the supposed e-commerce functionality that Plaintiff alleges (such as "Buy Now" or "Where to Buy" buttons).  *See* ECF Nos. 1-2, 1-3 (Exhibits B and C to original complaint).[5]  Throughout months of conferral before Intel's prior motion to dismiss, Plaintiff's counsel flatly refused to identify any other URL containing the alleged indicators of e-commerce (such as a "checkout workflow" with the ability to "apply promotions" and "complete payment," FAC ¶ 35).  *See* Prior MTD at 8-9.  The operative Complaint still identifies no such pages; the parties' conferral after Plaintiff's amendment is discussed *infra* at 10-11.

---

[4] *See also Accelerating Change Together*, Intel, https://www.intel.com/content/www/us/en/partner/showcase/accenture/overview.html (last visited May 4, 2026) (Intel page announcing and discussing the project).

[5] The operative Complaint includes no exhibits, but references Exhibits B and C in the same phrasing as the prior complaint, and Intel understands those references to be to the same documents previously attached.  *See* FAC ¶ 4; *see also id.* ¶¶ 33-35, 48.  The Complaint also references a missing "Exhibit 1," *id.* ¶ 91, but the substance of that missing exhibit is not relevant to this motion.

## II.      Plaintiff's Allegations.

Plaintiff is a visually impaired resident of New York.  FAC ¶ 17.  When using the internet, he uses adaptive software designed for visually impaired persons.  *Id.*  He alleges that he visited Intel's website on three occasions to research and purchase specific Intel products.  *Id.* ¶ 32.  Those products are the Intel Core Ultra 9 Processor (Series 2), which is a CPU, and the Intel Arc B580 Graphics Card, which is a GPU.  *Id.* ¶¶ 33-34.  Plaintiff alleges that he "attempted to navigate Intel's checkout workflow to explore purchasing options and download drivers," but that accessibility barriers on that "checkout workflow" allegedly "directly prevented Plaintiff from completing transactions."  *Id.* ¶ 35.

Plaintiff alleges that he "was forced to abandon transactions" on Intel's website "mid-workflow," and incurred time and logistical burdens "all without completing a single transaction."  *Id.* ¶¶ 44-46.  He states that he intends to return to Intel's site for "potential purchases" and "seasonal promotions," and "remains prepared to transact."  *Id.* ¶ 48.  He claims to have "encountered specific barriers" on Intel's website "while attempting to buy identified products," where he "was unable to complete transactions," but that he intends "to return and purchase" once the issues he has complained about are addressed.  *Id.* ¶ 49.

After Intel moved to dismiss claims grounded in the above allegations (now repeated verbatim), Plaintiff amended to insert the text now featuring in Paragraphs 36 to 44.  *See* FAC ¶¶ 36-44.  Those paragraphs are the only material change in the pleading.[6]  Plaintiff now alleges that in order to "fulfill[] purchases" through "authorized third-party retailers," *id.* ¶ 36, Intel's site

---

[6] Plaintiff also added a reference to a supposed "audit" performed in March 2026 that found "barriers" on Intel's website.  FAC ¶ 9.  This conclusory reference to a document unattached to the Complaint does not cure the foundational deficiency:  Plaintiff's claimed injury (being prevented from completing transactions using a non-existent checkout workflow) is fabricated.

contains "Buy Now" and "Where to Buy" buttons, *id.* ¶¶ 37-38, 42-44, which are "transactional gateways" and part of Intel's "purchase pathway," *id.* ¶¶ 37, 41, 44.  He alleges that "[w]hen a consumer selects a product configuration and activates Intel's 'Buy Now' or 'Where to Buy' buttons, Intel's website automatically directs the consumer to the appropriate authorized retailer for that exact configuration."  *Id.* ¶ 38.

Based on the above allegations, Plaintiff seeks to recover for himself and a putative nationwide class for purported violations of the ADA, and for himself and a putative New York subclass for purported violations of New York law.[7]

## III.    The Parties' Conferral.

As discussed above, Intel does not "target[] and solicit[] sales" of CPUs and GPUs from New York residents through its site and has not "generated" any revenue, let alone "significant revenue," from "online sales" to New Yorkers of "the very products" Plaintiff wanted to buy.  FAC ¶¶ 18-20; Shaughnessy Decl. ¶ 9.  And because Intel's website contains no "checkout workflow" for consumers to buy CPUs or GPUs, Plaintiff cannot have been prevented "from completing transactions" or have been "forced to abandon transactions" on that site.  *See* FAC ¶¶ 35-36;

---

[7] Shortly before initiating this suit, Plaintiff filed *Johnson v. Opco, LLC*, No. 1:25-cv-10027 (S.D.N.Y. Dec. 3, 2025), and the day after filing this suit, Plaintiff filed *Johnson v. Royal Green Appliances, Inc.*, No. 1:25-cv-10190 (S.D.N.Y. Dec. 10, 2025).  In February, Plaintiff also filed *Johnson v. Buck Mason, Inc.*, No. 1:26-cv-1167 (S.D.N.Y. Feb. 11, 2026), and in April, Plaintiff filed *Johnson v. Soapology NYC LLC*, No. 1:26-cv-2713 (S.D.N.Y. Apr. 2, 2026).  The complaints in the first three of those cases were attached to the Prior MTD, *see* ECF Nos. 22-3, 22-4, and 22-5, and the *Soapology* complaint is attached as Exhibit 3.  These cases all advance the same basic allegations in support of the identical five claims.  *See, e.g.*, ECF No. 22-4 ¶ 29 (complaining about alleged inability to move through "checkout workflow").  Many judges in this District have expressed distaste for this practice.  *E.g.*, *Wahab v. Surya Nature, Inc.*, 2025 WL 872112, at *1 & n.1, *4 (S.D.N.Y. Mar. 20, 2025) (although plaintiff "is entitled to file lawsuits against as many websites as she believes have injured her," criticizing "serial" litigation using "cut-and-paste and fill-in-the-blank assertions" (cleaned up)); *Fernandez v. Buffalo Jackson Trading Co.*, 2025 WL 1101478, at *2-4 (S.D.N.Y. Apr. 14, 2025) (expressing similar skepticism and concerns).

Shaughnessy Decl. ¶¶ 5-9; *see also supra* at 4-6.  The Complaint is thus grounded in numerous false contentions both about Intel's website and about Plaintiff's conduct.

Together with those false contentions, other evidence since this case was filed reinforces what appears to be a significant failure of pre-suit investigation.  For example, links in Paragraphs 60 and 67 purport to point to www.intel.com but in fact link to www.royalgreenappliance.com. That is a website for Royal Green Appliances, whom Plaintiff sued the day after he filed this suit. *See supra* at 8 n.7.  These hyperlinks have pointed to that wrong website since this case was filed, and Intel previously noted as much.  Prior MTD at 7-8.  Those URLs continue to misdirect.  Added to that, a complaint filed in a case initiated on the same day as this one by Plaintiff's counsel on behalf of a different client in *Simmons v. Pilot Corp. of America*, No. 1:25-cv-10157 (S.D.N.Y.), contains *identical* allegations in whole or in part in 91 of the 93 paragraphs of the original complaint in this action.  *Compare* ECF No. 5, *passim*, *with* ECF No. 22-6, *passim*.

Although Plaintiff alleges that he visited Intel's website on three occasions over the course of about three weeks in October and November 2025—once to research a CPU he wanted to purchase, once to research a GPU he wanted to purchase, and once to "navigate Intel's checkout workflow," "apply promotions," and "complete payment," FAC ¶¶ 33-35—neither the original complaint (including its exhibits) nor the operative Complaint identifies any page that contains the e-commerce functionality that Plaintiff contends amounts to Intel's transaction of business in New York.

In view of the above, counsel for Intel engaged Plaintiff's counsel to discuss, among other things, the many errors in the pleading, including the (non-existent) "checkout workflow" where Plaintiff claims he was unable to "complet[e] a single transaction," "apply promotions," and so on. Kurtzer Decl. ¶ 2.  Counsel spoke by telephone on multiple occasions and exchanged

correspondence.  *Id.*  Through those conferrals, counsel for Intel sought to understand the good faith basis for this suit in light of these false allegations and repeatedly asked that Plaintiff identify the URLs that purportedly caused him injury.  *Id.* ¶¶ 2-4; *see also* Prior MTD at 8-9.

During that conferral, Plaintiff's counsel expressly acknowledged that "it does not appear that Intel sells any products on its website," Ex. 1, but Plaintiff withdrew none of his false allegations.  Between the filing of this suit and until after Intel filed its prior motion to dismiss, Plaintiff's counsel refused to identify any URLs on Intel's website containing "checkout workflows," or permitting a shopper to "apply promotions," and so on.  Kurtzer Decl. ¶¶ 2-4.  After that motion was filed, Plaintiff amended, but even now, the Complaint still identifies no URLs other than the two screenshotted pages attached to the original pleading.  *See* FAC, *passim*.  The day before the Court's Initial Pretrial Conference, Plaintiff's counsel identified to Intel seven "Intel URLs Referenced in the Amended Complaint (¶¶ 37–44)."  Ex. 2 (R. Schonfeld email, Apr. 8, 2026).

## IV.    The URLs Plaintiff Has Identified As Being At Issue.

Intel has investigated the seven URLs identified to it during conferral as "[r]eferenced in the Amended Complaint."[8]  None of these seven pages display any of the purported "transactional

---

[8] For ease of the Court's reference, those URLs are:
- https://www.intel.com/content/www/us/en/products/sku/236858/intel-core-ultra-9-processor-288v-series-2.html
- https://www.intel.com/content/www/us/en/products/sku/236901/intel-arc-b580-graphics-card.html
- https://www.intel.com/content/www/us/en/products/details/processors.html
- https://www.intel.com/content/www/us/en/products/details/discrete-gpus.html
- https://www.intel.com/content/www/us/en/buy.html
- https://www.intel.com/content/www/us/en/buy/retailer.html
- https://www.intel.com/content/www/us/en/products/compare.html

*Id.*  Independent judicial review of website pages is well within the Court's authority and consistent with established practice.  *See Diaz v. Kroger Co.*, 2019 WL 2357531, at *7 (S.D.N.Y. June 4,

gateway" or "purchase pathway" functionality, with the "Buy Now" and "Where to Buy" buttons that Plaintiff repeatedly alleges, nor do they permit a visitor to "apply promotions," obtain "expected promotional pricing," or "complete payment." *See* Declaration of Scott Strohmeyer ("Strohmeyer Decl.") ¶¶ 4-9. Nothing on any such page involves Intel "automatically direct[ing] any consumer" to a specific "authorized retailer" for an "exact configuration." *Compare id.*, *with* FAC ¶¶ 37-44. Beyond information regarding Intel and its products, these pages offer nothing more than links from Intel's site, which offers no e-commerce functionality, to various retailers that sell standalone CPUs and GPUs, for the few consumers who choose to buy individual processors.

## STANDARD OF REVIEW

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing the Court's personal jurisdiction over the defendant. *Minden Pictures, Inc. v. Grupo Televisa, S.A.B.*, 738 F. Supp. 3d 458, 463 (S.D.N.Y. 2024). "[A]ll pertinent documentation submitted by the parties may be considered in deciding [a Rule 12(b)(2)] motion," *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 798 (S.D.N.Y. 2015) (citation omitted), *aff'd*, 660 F. App'x 43 (2d Cir. 2016), including "affidavits, declarations, or exhibits," *Creative Photographers, Inc. v. Grupo Televisa S.A.B.*, 763 F. Supp. 3d 618, 623-24 (S.D.N.Y. 2025) (Liman, J.). On a Rule 12(b)(2) motion, "resolving all doubts in the plaintiff's favor is not the same as blindly crediting all allegations regardless of their factual support." *SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 167 (S.D.N.Y. 2015) (citation omitted), *aff'd*, 882 F.3d 333 (2d Cir. 2018). Thus, "where there is an affidavit of a defendant" such as here,

2019) (conducting independent review of website in evaluating personal jurisdiction); *Camacho v. Northeastern Univ.*, 2019 WL 5190688, at *4 (S.D.N.Y. Oct. 15, 2019) (same).

11

"the Court assumes the verity of the Plaintiff's allegations" only "to the extent they are uncontroverted by the Defendant's affidavit." *Lewis v. Samsung SDI Co.*, 2025 WL 1826471, at *4 (S.D.N.Y. July 2, 2025) (cleaned up). Plaintiff "cannot rely merely on conclusory statements or allegations," but must make a "factually supported" showing of jurisdiction. *Beeney v. InSightec, Inc.*, 2014 WL 3610941, at *2 (S.D.N.Y. July 7, 2014) (citation omitted).

With respect to Rule 12(b)(1), the principle is the same. The plaintiff bears the burden of "proving by a preponderance of the evidence that subject matter jurisdiction exists." *Calcano v. Cole Haan LLC*, 2021 WL 849434, at *1, *3 (S.D.N.Y. Mar. 5, 2021) (cleaned up) (dismissing ADA case for lack of standing). Thus, the plaintiff must "alleg[e] facts that affirmatively and plausibly suggest" standing to sue in connection with a live controversy. *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 74-75 (2d Cir. 2022) (citation omitted). In response, a defendant may make a "fact-based Rule 12(b)(1) motion" by "proffering evidence beyond" the pleadings. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016). The plaintiff must present controverting evidence "if the affidavits submitted on a 12(b)(1) motion . . . reveal the existence of factual problems" with respect to jurisdiction. *Id.* (alteration in original) (citation omitted).[9]

Finally, "[t]o withstand a Rule 12(b)(6) motion to dismiss," a plaintiff must allege facts that "raise a right to relief above the speculative level." *Cole Haan LLC*, 2021 WL 849434, at *1-2, *3-5 (citation omitted). "Failure to adequately allege an essential element of a claim is grounds for dismissal under Rule 12(b)(6)." *Sookul v. Fresh Clean Threads, Inc.*, 754 F. Supp. 3d 395, 401 (S.D.N.Y. 2024) (internal quotation marks omitted).

---

[9] Although courts usually consider subject matter jurisdiction before personal jurisdiction, a court "faced with a straightforward personal jurisdiction issue may decide the personal jurisdiction question first if resolving that issue terminates the case." *Al-Ahmed v. Twitter, Inc.*, 553 F. Supp. 3d 118, 124 (S.D.N.Y. 2021) (cleaned up).

Whether evaluating the sufficiency of the pleading or the viability of jurisdictional allegations, the Court need not "accept as true legal conclusions couched as factual allegations," *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009), or "naked assertion[s] devoid of further factual enhancement," *Swarovski*, 36 F.4th at 74-75 (citation omitted).

**ARGUMENT**

**I.     INTEL IS NOT SUBJECT TO PERSONAL JURISDICTION ON PLAINTIFF'S CLAIMS.**

Personal jurisdiction falls into two categories.  "General, all-purpose jurisdiction permits a court to hear any and all claims against an entity.  Specific jurisdiction, on the other hand, permits adjudicatory authority only over issues that arise out of or relate to the entity's contacts with the forum."  *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 134 (2d Cir. 2014) (cleaned up).  To evaluate jurisdiction over an out-of-state defendant, a court "first consider[s] whether the state's long-arm statute provides a statutory basis for jurisdiction and, if so, whether exercising personal jurisdiction would comport with due process."  *Edwardo v. Roman Cath. Bishop of Providence*, 66 F.4th 69, 73 (2d Cir. 2023).  Here, Plaintiff fails on both statutory and constitutional grounds.  No New York statutory provision authorizes jurisdiction over Intel on his claims, and the Due Process Clause prohibits jurisdiction over Intel for the same reason.

**A.     Intel Is Not Subject to General Jurisdiction in New York.**

General jurisdiction applies where the jurisdiction is "one in which the corporation is fairly regarded as at home."  *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 262 (2017) (citation omitted).  The "paradigm all-purpose forums" for general jurisdiction are a corporation's place of incorporation and principal place of business.  *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).  Here, the Complaint does not allege that Intel is incorporated in New York, has its

13

principal place of business in New York, or is otherwise "at home" in New York.  Indeed, Plaintiff acknowledges that Intel is incorporated in Delaware and maintains its principal offices in California.  FAC ¶ 13.  Accordingly, the Court lacks general jurisdiction over Intel.

**B.      Intel Is Not Subject to Specific Personal Jurisdiction on Plaintiff's Claims.**

Plaintiff cannot establish specific jurisdiction over Intel on his claims, whether under the New York long-arm statute (CPLR § 302) or the Due Process Clause of the Fourteenth Amendment.   Under CPLR § 302(a)(1), Intel is subject to specific personal jurisdiction on Plaintiff's claims only if Plaintiff demonstrates *both* that (1) Intel has "transacted business" in New York, *and* (2) that Plaintiff's claims "arise[] from" that business activity.  *Creative Photographers, Inc. v. Grupo Televisa S.A.B.*, 763 F. Supp. 3d 618, 631 (S.D.N.Y. 2025) (citation omitted).[10]  The "transacted business" prong requires that Intel purposefully availed itself of the privilege of conducting activity in New York.  *Licci ex rel. Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 168-69 (2d Cir. 2013) (citation omitted).  And the "arises from" prong requires the plaintiff to demonstrate an "articulable nexus" or a "substantial relationship" between that activity and the claim.  *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 249 (2d Cir. 2007) (citation omitted).  Similarly, under the Due Process Clause, Plaintiff's claims must "arise out of" or "relate to" the defendant's contacts with the forum.  *Bristol-Myers Squibb*, 582 U.S. at 262 (cleaned up).

No such connection exists here because Plaintiff's claims do not "arise from," "arise out of," or "relate to" any contacts between Intel and New York, given that Plaintiff's claims are grounded in his alleged inability to purchase a CPU or GPU *on a website that does not sell CPUs*

---

[10] The other provisions of New York's long-arm statute are not implicated here because they each require a "tortious act," CPLR §§ 302(a)(2), (3), and "[a] discrimination claim is created by statute, which did not exist at common law, and therefore cannot give rise to tort liability," *Zaitsev v. Salomon Bros., Inc.*, 1994 WL 361463, at *4 (S.D.N.Y. July 8, 1994) (citation omitted), *aff'd*, 60 F.3d 1001 (2d Cir. 1995).

*or GPUs*. To support personal jurisdiction, Plaintiff alleges that Intel "has generated significant revenue from online sales," to the tune of "millions of dollars in monthly online revenue," including of the "very products Plaintiff attempted to research and access." FAC ¶ 20. But these assertions are false, as Plaintiff's counsel expressly acknowledged in conferral, recognizing that "it does not appear that Intel sells any products on its website," Ex. 1, before Plaintiff realleged those propositions unchanged in his amendment. Because Intel simply *does not offer* the transaction that Plaintiff claims he was denied, his purported injury *cannot* stem from *any* transaction by Intel, let alone a New York transaction.

Courts routinely dismiss claims for lack of personal jurisdiction where a plaintiff's claims have no substantial relationship to the defendant's forum-specific activities. *See, e.g.*, *Tucker v. Firstlight Home Care Franchising, LLC*, 2019 WL 2996694, at *5 (S.D.N.Y. June 10, 2019) (no personal jurisdiction over defendant in ADA website case where defendant "does not derive revenue from its website," "the website has no transactional functionality," and a customer "cannot order, purchase, pay for or otherwise effect a revenue-producing transaction" on the website (cleaned up)), *R. & R. adopted*, 2019 WL 2992222 (S.D.N.Y. Jul. 9, 2019); *Conrad v. Latido Mitu Holdings, LLC*, 2021 WL 5909656, at *4 (S.D.N.Y. Dec. 10, 2021) (defendants' website sales did not establish specific personal jurisdiction under CPLR § 302(a)(1) over claim of copyright infringement). In *Al-Ahmed v. Twitter, Inc.*, for example, the Court dismissed a complaint against Twitter stemming from Twitter's suspension of the plaintiff's account because the plaintiff failed to show that "his claims related to the suspension of his account arise from or are related to [defendant's] presentation of advertisements for New York-based products and services to him (or to anyone else)." 553 F. Supp. 3d 118, 127 (S.D.N.Y. 2021). The same is true here—Intel does not sell CPUs or GPUs on its website to New York residents (or to anyone else), and thus Plaintiff's

supposed injuries in connection with a purported inability to buy such products on Intel's website do not arise from or relate to Intel's contacts with New York. *See* Shaughnessy Decl. ¶¶ 5-9.

Plaintiff's new allegations about supposed "transactional gateways" and "purchase pathways," FAC ¶¶ 36-44, do not remedy the deficiency in his jurisdictional theory. A defendant does not transact business in New York by operating a website that merely links to a third-party site where a product can be purchased, and that is all that is alleged.[11] In *Stephan v. Babysport, LLC*, 499 F. Supp. 2d 279 (E.D.N.Y. 2007), for example, the court held that the defendant corporation's website did not support personal jurisdiction over the defendant in New York, notwithstanding links to third-party retail sites, because customers "cannot complete a contract for sale via the [defendant's] website." *Id.* at 287. The fact that the website "links the user to sites such as Amazon.com where the product may be purchased" was insufficient for personal jurisdiction. *Id.*; *see also Warner Bros. Ent. Inc. v. Ideal World Direct*, 516 F. Supp. 2d 261, 267 (S.D.N.Y. 2007) (no personal jurisdiction over website operator, even though site "provided links to third-party download providers"); *Camacho*, 2019 WL 5190688, at *4 (no personal jurisdiction over university whose website "provide[d] a link" to a third-party tool "hosted and operated on a separate domain").

As Plaintiff quietly acknowledges, all Intel's website provides is an "outbound link" to "retailer checkout pages" *operated by third parties.* FAC ¶¶ 36-44. Intel does not transact business

---

[11] A search of federal and state cases on Westlaw reveals no instance in which the term "purchase pathway" has ever been used as a term of art in the manner Plaintiff appears to describe. *E.g.*, FAC ¶¶ 37, 44. The same is true of the terms "transactional gateway," *id.*, and "[p]urchase [g]ateway," *id.* ¶ 42. In *Parallel Networks, LLC v. Netflix, Inc.*, 2009 WL 2996722, at *14 (E.D. Tex. Aug. 24, 2009)—a claim construction order—the court characterized a "transaction gateway client" as a computing client that "can provide access to a database by way of a transaction processing system." As discussed *supra*, Intel's website does not permit any transaction processing for the purchase of any processor.

in New York when a visitor comes to its site and then uses a hyperlink to reach *a different site* where a purchase can be made, because "a person is [not] able to purchase or bid on items *from [Intel's] website*." *Ye Olde Time Keepers, Inc. v. C.R. Martin Auctioneers, Inc.*, 2018 WL 1832930, at *6 (E.D.N.Y. Apr. 17, 2018) (emphasis added). As this Court has observed, "[a] defendant who uses [a] third-party website for sale of an item . . . cannot be said to be soliciting a particular forum; in that case, a third party, and not the user, controls the interactivity and marketing efforts of the website, and the interaction with New York by the defendant cannot be said to be purposeful." *Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 363 (S.D.N.Y. 2020) (citation omitted).

Plaintiff's generalized assertions that Intel operates a nationally accessible website, *see* FAC ¶ 18, do not move the needle either. In *Guglielmo v. JEGS Automotive, Inc.*, this Court found that no *prima facie* showing of personal jurisdiction had been made despite similar allegations of a national website presence, because the plaintiff failed to show that the defendant used its website "to make sales in New York and to reach into New York in a meaningful way." 2021 WL 1026168, at *4 (S.D.N.Y. Mar. 17, 2021). After all, "[t]o hold otherwise, and to accept [p]laintiff's theory, would make any company that made its purchases available for sale nationwide subject to personal jurisdiction in every state nationwide, regardless of whether a consumer made a purchase or the company made such sales." *Id.* This Court's point in *Guglielmo* is even stronger here, where Intel's website cannot be used to purchase a CPU or GPU *anywhere*, New York included.

The Court should dismiss the Complaint in its entirety for lack of personal jurisdiction.

## II.    THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS SUIT.

The Court also lacks subject matter jurisdiction over this suit because Plaintiff fails to make a threshold showing that he has suffered an injury in fact sufficient for Article III standing.

17

Article III of the Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citation omitted). Standing requires (i) an injury in fact that is concrete, particularized, and actual or imminent; (ii) that was likely caused by the defendant; and (iii) that would be redressed by judicial relief. *Swarovski*, 36 F.4th at 74. Because "federal courts do not adjudicate hypothetical or abstract disputes," *TransUnion*, 594 U.S. at 423, Plaintiff "must allege that [his] 'injuries from purported ADA violations'" were "both concrete and particular to [him] and must do so with sufficient specificity," *Frawley v. Med. Mgmt. Grp.*, 2022 WL 17812697, at *3 (S.D.N.Y. Apr. 25, 2022) (citation omitted). Further, a plaintiff seeking injunctive relief "may not rely solely on past injury, but also must establish that '[he] is likely to be harmed again in the future in a similar way.'" *Swarovski*, 36 F.4th at 74 (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016)). The "threatened injury must be *certainly impending*"—allegations of "*possible* future injury" are not sufficient. *Id.* (quoting *Am. Civ. Liberties Union v. Clapper*, 785 F.3d 787, 800 (2d Cir. 2015)).

Plaintiff fails to plead a concrete and particularized injury because his claims are predicated on the false premise of having been personally rendered unable to buy two identified products on a website where those products cannot be bought by anyone. The thrust of Plaintiff's claim is that he "encountered [accessibility] barriers . . . while attempting to buy" Intel products on Intel's website and "was unable to complete transactions" because of those barriers. FAC ¶ 49. Yet Plaintiff's alleged injury is based on assertions that are flatly untrue. *See supra* at 1-3, 7-11. Because there is no "checkout workflow" for the purchase of any CPU or GPU on Intel's website, Plaintiff could not have been "forced to abandon transactions mid-workflow," or stymied in his efforts to "apply promotions or complete payment." *Id.* These errors render Plaintiff's alleged

18

injury "abstract" and not concrete.  *See TransUnion*, 594 U.S. at 417, 442 ("No concrete harm, no standing.").[12]

Plaintiff's allegations also lack the requisite specificity for Article III standing, which requires him to identify the specific website portions that purportedly gave rise to his injury.  *See, e.g.*, *Mendez v. Apple Inc.*, 2019 WL 2611168, at *2 (S.D.N.Y. Mar. 28, 2019) (purported injuries lacked "requisite specificity" where plaintiff failed to "identify sections of the website she tried to access but could not"); *Rizzi v. Hilton Domestic Operating Co.*, 2019 WL 5874327, at *5 (E.D.N.Y. July 18, 2019) (plaintiff failed to plead injury where complaint alleged "programming errors" but did not explain "how these violations injured" plaintiff).  Here, the Complaint fails to identify any page that "directly prevented Plaintiff from completing transactions," "apply[ing] promotions," and so on.  FAC ¶¶ 35, 45 (describing "attempt[s] to buy" that were "frustrat[ed]").  There are no URLs identified anywhere in the Complaint, the exhibits to the Complaint include screenshots only of generic product description pages where no purchase can be made, and the URLs that Plaintiff has now belatedly identified in conferral show no "checkout workflow" (nor otherwise permit the transaction Plaintiff says he tried to undertake).  *See supra* at 1-3, 6-11.

---

[12] In *Swarovski*, the Second Circuit cautioned that "transparent cut-and-paste and fill-in-the-blank" standing allegations by a repeat ADA plaintiff may be less plausible. 36 F.4th at 77-78.  Here, Plaintiff is a repeat ADA plaintiff, *see supra* at 8 n.7, and a search of ECF shows that his counsel initiated nearly 30 similar lawsuits in this District in the past few months alone.  As relevant here, the *Simmons* complaint referenced *supra* at 9 contains identical language regarding a "checkout workflow," "abandon[ed] transactions," and so on.  *Compare* FAC ¶¶ 35, 45-49, *with* ECF No. 22-6 ¶¶ 35-40.  Intel cannot speak to any allegations regarding Pilot Corporation's website and Randolph Simmons's claims of having to "abandon transactions mid-workflow" to purchase Pilot pens, but those identically-formulated allegations are simply made up as to Intel's website.  *See supra* at 1-11.  The Court may properly consider this "broader context" in assessing Plaintiff's allegations.  *Swarovski*, 36 F.4th at 77; *see also Wahab*, 2025 WL 872112, at *4 (complaint was "too boilerplate" to establish standing); *Buffalo Jackson*, 2025 WL 1101478, at *4 ("[I]t is not lost on the Court that other plaintiffs represented by the [same] law firm . . . have allegedly engaged in similarly abnormal purchasing practices, filing complaints relying on substantially the same template[.]").

19

### III.   INTEL'S WEBSITE IS NOT A PUBLIC ACCOMMODATION.

Setting aside the jurisdictional defects, Plaintiff fails to state a claim because Intel's website is not a "public accommodation."  The ADA prohibits discrimination "on the basis of disability" in "any place of public accommodation."  42 U.S.C. § 12182(a).  To state a claim, a plaintiff thus must plausibly allege, *inter alia*, "that the defendant owns, leases, or operates 'a place of public accommodation.'"  *Sookul v. Fresh Clean Threads, Inc.*, 754 F. Supp. 3d 395, 404-05 (S.D.N.Y. 2024) (quoting *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008) (per curiam)).  New York State Human Rights Law and New York Civil Rights Law claims are analyzed under the same standard as ADA claims.  *See Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 97 (2d Cir. 2012) (noting that claims under NYSHRL are "coextensive" with the "Title III claim" under ADA); *Ogbolu v. Trs. of Columbia Univ.*, 2022 WL 280934, at *6 (S.D.N.Y. Jan. 31, 2022) (Title III, NYSHRL, and NYCRL are "analyzed under the same legal standards"); *Feltenstein v. City of New Rochelle*, 2019 WL 3543246, at *2 (S.D.N.Y. Aug. 5, 2019) (ADA, NYSHRL, and NYCRL claims "governed by the same legal standards").[13]

As this Court has recently observed, the Second Circuit has not resolved whether a website untethered to a bricks-and-mortar location is a "place of public accommodation."  *Sumlin*, 2025 WL 1703067, at *3 (noting "judicial controversy" on this point).  Intel respectfully submits that the better argument is that a standalone website does not fall within the ambit of the ADA, as

---

[13] In the context of this case, the same should be true for Plaintiff's New York City Human Rights Law ("NYCHRL") claim as well.  The NYCHRL extends coverage to any "place *or provider* of public accommodation," which is broader than the ADA's language.  N.Y.C. Admin. Code § 8-107(4)(a) (emphasis added).  But that distinction does not alter the analysis here because Intel's website is not a "public accommodation" in the first place.  *See Winegard v. Newsday LLC*, 556 F. Supp. 3d 173, 175-76 (E.D.N.Y. 2021) (the term "public accommodation" has historically referred to businesses based on "the public nature of their *physical* facilities" (emphasis added)); *see also infra* at 21-22 (discussing authority from other circuits in accord).

several courts in this District and Circuit have concluded.  *See, e.g.*, *Sookul*, 754 F. Supp. 3d at 405-09 (standalone website was not covered by ADA in light of statutory definition of "public accommodation"; "even if websites were 'places,' they are not 'public accommodations'"); *Fernandez v. Gainful Health, Inc.*, 2025 WL 3538339, at *2-3 (S.D.N.Y. Dec. 10, 2025) ("the ADA does not cover standalone websites"); *Winegard*, 556 F. Supp. 3d at 180 ("'public accommodation' clearly refers to physical places, and does not include stand-alone websites"); *Martinez v. MyLife.com*, 2021 WL 5052745, at *2 (E.D.N.Y. Nov. 1, 2021) ("the plain text of the statute contemplates inclusion of only businesses with a physical location").

The plain text of the statute supports this reading.  The ADA lists twelve "exhaustive categories of establishments that qualify" as public accommodations.  *Gainful Health*, 2025 WL 3538339, at *1-2; 42 U.S.C. § 12181(7).  Each statutory subparagraph is followed by a residual clause that reflects the statute's focus on "actual, physical places."  *Winegard*, 556 F. Supp. 3d at 179 (citation omitted).  *Winegard* is instructive.  There, a plaintiff alleged that the website of a local newspaper distributor with no physical retail operations violated the ADA.  *Id.* at 174.  The court closely evaluated the text, structure, and history of the statute in holding that the term "public accommodation" requires a physical place; a website affiliated with such a physical site may yield liability, but not a website standing alone.  *Id.* at 175-80.

Most circuits that have addressed the issue to date are in accord.  *See Gil v. Winn-Dixie Stores, Inc.*, 993 F.3d 1266, 1277 (11th Cir. 2021) ("pursuant to the plain language of Title III of the ADA, public accommodations are limited to actual, physical places"), *opinion vacated on reh'g on mootness grounds*, 21 F.4th 775 (11th Cir. 2021); *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 905 (9th Cir. 2019) ("Because the ADA only covers actual, physical places . . . there had to be some connection between the good or service complained of and an actual physical place."

21

(citing *Weyer v. Twentieth Cent. Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000)); *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 614 (3d Cir. 1998) ("[W]e do not find the term 'public accommodation' or the terms in 42 U.S.C. § 12181(7) to refer to non-physical access or even to be ambiguous as to their meaning."); *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1010-11 (6th Cir. 1997) ("a public accommodation is a physical place").[14]

The Complaint fails to identify any bricks-and-mortar store connected to Intel's website, and there is none. Shaughnessy Decl. ¶ 5. Because Plaintiff fails to plausibly plead that Intel's website is a "public accommodation," the Court should dismiss all claims.

## IV.    IN THE ALTERNATIVE, THE COURT SHOULD DECLINE SUPPLEMENTAL JURISDICTION OVER THE STATE-LAW CLAIMS (COUNTS II-IV).

Plaintiff asserts that the Court possesses federal question subject matter jurisdiction over this case by virtue of his ADA claim. FAC ¶ 10. Even if the Court finds subject matter jurisdiction and personal jurisdiction established, the Court may properly decline to exercise supplemental jurisdiction over Plaintiff's state-law claims after finding Plaintiff's allegations in support of his ADA claim insufficiently pleaded based on the arguments in Section III, *supra*. *See* 28 U.S.C. § 1367(c)(3) (court may decline to exercise supplemental jurisdiction if it has "dismissed all claims over which it has original jurisdiction"); *see also Brzak v. United Nations*, 597 F.3d 107, 113-14 (2d Cir. 2010) (noting that "if a plaintiff's federal claims are dismissed before trial, the state claims should be dismissed as well" (cleaned up)); *Klein & Co. Futures v. Bd. of Trade of N.Y.*, 464 F.3d 255, 262 (2d Cir. 2006) ("[I]t is well settled that where . . . the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims.").

---

[14] The First and Seventh Circuits disagree. *Carparts Distrib. Ctr., Inc. v. Auto. Wholesaler's Ass'n*, 37 F.3d 12, 19 (1st Cir. 1994); *Doe v. Mut. of Omaha Ins. Co.*, 179 F.3d 557, 559 (7th Cir. 1999).

In the Second Circuit, courts routinely decline to exercise supplemental jurisdiction over state-law claims where plaintiff's federal law claims are dismissed, including in many ADA website accessibility cases. *See, e.g.*, *Mejia v. High Brew Coffee Inc.*, 2024 WL 4350912, at *6 (S.D.N.Y. Sept. 30, 2024) ("Because all of [p]laintiff's federal claims [under the ADA] are dismissed, this Court declines to exercise supplemental jurisdiction [over] [p]laintiff's state and local law claims."); *Monegro v. St. Insider Dot Com Inc.*, 2022 WL 445797, at *4 (S.D.N.Y. Feb. 11, 2022) (Liman, J.) (in website accessibility case, noting that even if all claims had not been dismissed for lack of subject matter jurisdiction, "since the Court has dismissed Plaintiff's claims arising under federal law, it would also decline to assert supplemental jurisdiction"). Accordingly, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law claims, if those claims are not dismissed for other reasons.

## V.    THE COURT SHOULD DISMISS THE CLAIM FOR DECLARATORY RELIEF (COUNT V).

Courts commonly dismiss declaratory judgment claims where a plaintiff "has no independent substantive claim of a right to this relief." *KM Enters., Inc. v. McDonald*, 2012 WL 4472010, at *19 (E.D.N.Y. Sept. 25, 2012), *aff'd*, 518 F. App'x 12 (2d Cir. 2013); *see also Toretto v. Donnelley Fin. Sols., Inc.*, 583 F. Supp. 3d 570, 606 (S.D.N.Y. 2022) (dismissing claim). That is because "a request for relief in the form of a declaratory judgment does not by itself establish a case or controversy involving an adjudication of rights." *Keene Corp. v. Fiorelli (In re Joint E. & S. Dist. Asbestos Litig.)*, 14 F.3d 726, 731 (2d Cir. 1993). Because Plaintiff's substantive claims are subject to dismissal for the reasons above, the Court should dismiss Count V for declaratory relief. *See, e.g.*, *Wahab*, 2025 WL 872112, at *5 (dismissing request for declaratory relief upon dismissing ADA and NYCHRL claims in view of jurisdictional defects).

23

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint in its entirety.


Dated: May 4, 2026      Respectfully submitted,

             */s/ David S. Kurtzer-Ellenbogen*
             David S. Kurtzer-Ellenbogen
             James J. Kim (*pro hac vice*)
             WILLIAMS & CONNOLLY LLP
              650 Fifth Avenue, Suite 1500
              New York, NY 10019
             (202) 434-5000
             Email: dkurtzer@wc.com
               jkim@wc.com

             *Counsel for Defendant Intel Corporation*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this memorandum of law does not exceed 8,750 words and, thus, complies with Local Civil Rule 7.1(c). The total number of words contained in the foregoing brief, exclusive of the caption, table of contents, table of authorities, signature block, and this certificate, but including footnotes, is 7,657 words. In preparing this certificate, I have relied on the word count of the word-processing program used to prepare this brief.

/s/ *David S. Kurtzer-Ellenbogen*
David S. Kurtzer-Ellenbogen

**CERTIFICATE OF SERVICE**

I hereby certify that on May 4, 2026, I caused the foregoing to be filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all registered participants.

/s/ *David S. Kurtzer-Ellenbogen*
David S. Kurtzer-Ellenbogen