**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

RICHARD JOHNSON,

        *Plaintiff*,

    v.

INTEL CORPORATION,

        *Defendant*.

Civil Action No.
1:25-cv-10193-LJL

<u>ORAL ARGUMENT REQUESTED</u>

**DEFENDANT INTEL CORPORATION'S**
**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
**<u>PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

## TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................1

I.     INTEL IS NOT SUBJECT TO PERSONAL JURISDICTION ON PLAINTIFF'S
       CLAIMS. ....................................................................................................................1

II.    THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS
       SUIT............................................................................................................................4

III.   INTEL'S WEBSITE IS NOT A PUBLIC ACCOMMODATION....................................6

IV.    IN THE ALTERNATIVE, THE COURT SHOULD DECLINE
       SUPPLEMENTAL JURISDICTION OVER THE STATE-LAW CLAIMS
       (COUNTS II-IV).........................................................................................................9

V.     THE COURT SHOULD DISMISS THE CLAIM FOR DECLARATORY
       RELIEF (COUNT V)....................................................................................................9

VI.    THE COURT SHOULD DISMISS WITHOUT LEAVE TO AMEND. ..........................10

CONCLUSION......................................................................................................................11

## TABLE OF AUTHORITIES

Page

### CASES

*901 Props., LLC v. Bernstein-Burkley, P.C.*, 2026 WL 1283532 (S.D.N.Y. May 11, 2026)........11

*Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381 (E.D.N.Y. 2017)................................5

*Brady v. Anker Innovations Ltd.*, 2020 WL 158760 (S.D.N.Y. Jan. 13, 2020) .............................3

*Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68 (2d Cir. 2022) ......................................................6

*Camacho v. Northeastern University*, 2019 WL 5190688 (S.D.N.Y. Oct. 15, 2019) ....................3

*Del-Orden v. Bonobos, Inc.*, 2017 WL 6547902 (S.D.N.Y. Dec. 20, 2017) ..................................7

*Dicks v. Cooks Junction, Inc.*, 2023 WL 2775830 (S.D.N.Y. Apr. 4, 2023)..................................3

*EnviroCare Technologies, LLC v. Simanovsky*,
   2012 WL 2001443 (S.D.N.Y. June 4, 2012) ..............................................................................3

*Fernandez v. Gainful Health, Inc.*, 2025 WL 3538339 (S.D.N.Y. Dec. 10, 2025) ........................7

*Fernandez v. Vanilla Chip, LLC*, 2025 WL 1151475 (S.D.N.Y. Apr. 18, 2025)........................5, 8

*Harty v. Greenwich Hospitality Group LLC*, 536 F. App'x 154 (2d Cir. 2013) .............................5

*Harty v. West Point Realty, Inc.*, 28 F.4th 435 (2d Cir. 2022)........................................................5

*Herlihy v. Sandals Resorts Int'l, Ltd.*, 795 F. App'x 27 (2d Cir. 2019) .......................................10

*Kreisler v. Second Avenue Diner Corp.*, 731 F.3d 184 (2d Cir. 2013)...........................................5

*Laufer v. Ganesha Hosp. LLC*, 2022 WL 2444747 (2d Cir. July 5, 2022)....................................5

*Lewis v. Samsung SDI Co.*, 2025 WL 1826471 (S.D.N.Y. July 2, 2025).......................................1

*Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*,
   2016 WL 3748480 (S.D.N.Y. July 8, 2016) ...............................................................................3

*Lopez v. Arby's Franchisor, LLC*, 2021 WL 878735 (S.D.N.Y. Mar. 8, 2021) .........................7, 8

*Maione v. McDonald*, 2025 WL 2676591 (S.D.N.Y. Sep. 18, 2025)..............................................4

*Mattel, Inc. v. www.fisher-price.online*, 2022 WL 2801022 (S.D.N.Y. July 18, 2022) .................3

*Molchatsky v. United States*, 778 F. Supp. 2d 421 (S.D.N.Y. 2011),
   *aff'd*, 713 F.3d 159 (2d Cir. 2013)...........................................................................................10

*Mortimer Off Shore Servs., Ltd. v. Federal Republic of Germany*,
   615 F.3d 97 (2d Cir. 2010)........................................................................................................10

*National Fed. of the Blind v. Target Corp.*, 452 F. Supp. 2d 946 (N.D. Cal. 2006)......................9

*Nationwide Mut. Ins. Co. v. Morning Sun Bus Co.*,
   2011 WL 381612 (E.D.N.Y. Feb. 2, 2011)................................................................................10

*Pallozzi v. Allstate Life Insurance Co.*, 198 F.3d 28 (2d Cir. 1999)...............................................8

ii

Page

Cases—continued:

*Pearson Education, Inc. v. ABC Books, LLC*,
2020 WL 3547217 (S.D.N.Y. June 30, 2020) .........................................................................3

*Red Fort Cap., Inc. v. Guardhouse Prods. LLC*, 397 F. Supp. 3d 456 (S.D.N.Y. 2019) ................4

*Robles v. Domino's Pizza, LLC*, 913 F.3d 898 (9th Cir. 2019) ........................................................9

*Ruotolo v. City of New York*, 514 F.3d 184 (2d Cir. 2008).............................................................10

*Simmons v. Pilot Corp. of America*, No. 1:25-cv-10157 (S.D.N.Y.)...............................................6

*Sookul v. Fresh Clean Threads, Inc.*, 754 F. Supp. 3d 395 (S.D.N.Y. 2024)..................................8

*Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348 (S.D.N.Y. 2020) .....................................................2

*Stephan v. Babysport, LLC*, 499 F. Supp. 2d 279 (E.D.N.Y. 2007) .................................................2

*Sullivan v. BDG Media, Inc.*, 71 Misc. 3d 863 (N.Y. Sup. Ct. 2021)..............................................9

*Sumlin v. New York Beer Co., LLC*, 2025 WL 1703067 (S.D.N.Y. June 18, 2025)................6, 7, 8

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) .....................................................................5, 6

*Warner Bros. Entertainment Inc. v. Ideal World Direct*,
516 F. Supp. 2d 261 (S.D.N.Y. 2007).................................................................................2

*Winegard v. Newsday LLC*, 556 F. Supp. 3d 173 (S.D.N.Y. 2021) ........................................2, 7, 8

*Ye Olde Time Keepers, Inc. v. C.R. Martin Auctioneers, Inc.*,
2018 WL 1832930 (E.D.N.Y. Apr. 17, 2018) ..................................................................2, 3

**STATUTE AND RULE**

42 U.S.C. § 12181.................................................................................................................6, 7, 8

Fed. R. Civ. P. 12................................................................................................................1, 9

**OTHER AUTHORITY**

U.S. Dep't of Just., ADA Title III Technical Assistance Manual § III-1.2000 (1993),
https://www.ada.gov/resources/title-iii-manual/......................................................................7

## INTRODUCTION

Plaintiff's Opposition (ECF No. 28, "Opp.") provides no good-faith explanation for his flagrantly false allegations of having been "prevented" from buying microprocessors on Intel's website—*where microprocessors cannot be bought*—because of discriminatory barriers in "Intel's checkout workflow." *See* Mot. to Dismiss (ECF No. 27, "Mot."), *passim*; First Amended Compl. ("Complaint" or "FAC") ¶ 35. Plaintiff's claimed injury is illusory, his jurisdictional theory frivolous, and his substantive claims meritless. The Court should dismiss.

## ARGUMENT

### I. INTEL IS NOT SUBJECT TO PERSONAL JURISDICTION ON PLAINTIFF'S CLAIMS.

Intel's website does not offer the transaction Plaintiff alleges he attempted to undertake but was denied because of his disability. His claims thus cannot arise from, arise out of, or relate to any business Intel transacts in New York. Mot. 13-17.[1]

Plaintiff concedes that processors cannot be purchased on Intel's website. *See* Opp. 7-9 (describing Intel's website as a "channel[]" to third-party sites); *see also* FAC ¶¶ 36-44 (alleging "outbound link" to third-party websites); ECF No. 27-2 (Plaintiff's counsel stating "it does not appear that Intel sells any products on its website"). Intel's website offers no transactional functionality to buy processors, including on the URLs Plaintiff identified, and Plaintiff offers no controverting evidence. ECF No. 27-5 ¶ 9; ECF No. 27-6 ¶¶ 3-9. A customer cannot place a

---

[1] Plaintiff asserts that on this Rule 12(b)(2) motion, he "bears only a *prima facie* burden of jurisdiction" where "no discovery has occurred." Opp. 4-5. But where (as here) "there is an affidavit of a defendant" accompanying the motion, "the Court assumes the verity of the Plaintiff's allegations" only "to the extent they are uncontroverted by the Defendant's affidavit." *Lewis v. Samsung SDI Co.*, 2025 WL 1826471, at *4 (S.D.N.Y. July 2, 2025) (cleaned up).

product into a shopping cart, enter a billing or shipping address, input a credit card number, or undertake any other online purchasing step.

Lacking any genuine transactional nexus for jurisdiction, Plaintiff resorts to fabricated jargon—"interactive, multistep product-selection workflow," "transactional gateways," and the like, *e.g.*, Opp. 1, 4—in characterizing passive hyperlinks pointing to third-party retailers. *See* Mot. 4-11. The existence of those hyperlinks is undisputed, and so the question here is purely legal: whether including a passive hyperlink to a third-party retailer constitutes "transacting business" in New York. It is not. "A defendant who uses [a] third-party website for sale of an item ... cannot be said to be soliciting a particular forum[.]" *Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 363-64 (S.D.N.Y. 2020) (finding no personal jurisdiction over defendants absent allegations that they "sold and shipped" products to New York); *see also* Mot. 14-17.

Plaintiff fails to meaningfully respond to the cases Intel cited, *see* Mot. 16-17. He characterizes *Stephan v. Babysport, LLC*, 499 F. Supp. 2d 279 (E.D.N.Y. 2007), and *Warner Bros. Entertainment Inc. v. Ideal World Direct*, 516 F. Supp. 2d 261 (S.D.N.Y. 2007), as "2007" cases addressing "bare hyperlinks," Opp. 9, but e-commerce dates well before those decisions. *See, e.g.*, *Winegard v. Newsday LLC*, 556 F. Supp. 3d 173, 177 n.3 (S.D.N.Y. 2021) (noting "retailers' embrace of the internet" in the 1990s). In both *Stephan* and *Warner Bros.*, the defendants' websites hyperlinked to third-party seller sites, and both courts found that insufficient for personal jurisdiction. Plaintiff's discussion (Opp. 8-9) of *Spin Master* is unavailing—the Court found no jurisdiction over 49 defendants, and exercised jurisdiction only over the six defendants that "offered for sale" and "ship[ped]" counterfeit products directly to customers, 463 F. Supp. 3d at 363-64, a far cry from a hyperlink to a third-party retailer. And he ignores entirely *Ye Olde Time*

2

*Keepers, Inc. v. C.R. Martin Auctioneers, Inc.*, 2018 WL 1832930 (E.D.N.Y. Apr. 17, 2018), and

*Camacho v. Northeastern University*, 2019 WL 5190688 (S.D.N.Y. Oct. 15, 2019).

Unable to distinguish Intel's authority, Plaintiff cites cases involving *direct* online sales.

Opp. 7-9.  Those cases are easily distinguishable.

- The copyright defendant in *Pearson Education, Inc. v. ABC Books, LLC*, 2020 WL 3547217 (S.D.N.Y. June 30, 2020), directly "sold," "distributed," and "shipped" textbooks on Amazon, a "marketplace for third-party sellers to ... sell their products or goods directly to consumers." *Id.* at *2, *6.

- In *Dicks v. Cooks Junction, Inc.*, 2023 WL 2775830 (S.D.N.Y. Apr. 4, 2023), the defendant "allow[ed] persons ... to shop for and purchase cooking supplies" directly on its website and "d[id] not sell any of its products through third party retail stores." *Id.* at *2-4.

- In *Mattel, Inc. v. www.fisher-price.online*, 2022 WL 2801022 (S.D.N.Y. July 18, 2022), the defendant "advertise[d], distribute[d], s[old], and ship[ped] counterfeiting products directly to consumers." *Id.* at *10.

- In *Brady v. Anker Innovations Ltd.*, 2020 WL 158760 (S.D.N.Y. Jan. 13, 2020), the defendant was "listed as the sole authorized seller of authentic Anker products" on Amazon, "ship[ped] its products in bulk to Amazon's warehouse ... in anticipation of consumer purchases," and "fulfill[ed] orders completed on the Anker website by shipping products from [its] warehouse." *Id.* at *3.

- In *Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*, 2016 WL 3748480 (S.D.N.Y. July 8, 2016), the defendants "sold goods ... via Amazon.com" and "conduct[ed] their business of selling infringing garments on the Amazon platform." *Id.* at *1-3.

- And in *EnviroCare Technologies, LLC v. Simanovsky*, 2012 WL 2001443 (S.D.N.Y. June 4, 2012), the defendants "created a username, posted an item for sale on Amazon, and shipped the item to the Amazon's [sic] order fulfillment office," "marketed and sold their products exclusively through Amazon and eBay," and "entered into at least 46,000 separate transactions with individual buyers." *Id.* at *3-4.

None of these cases involved, as here, a defendant whose site merely linked to third-party sellers.

Plaintiff also repeatedly invokes his counsel's purchase of an Intel processor after visiting

Intel's website and clicking a hyperlink there.  Opp. 4, 7-9; ECF No. 29-3.  But that hyperlink took

counsel to Newegg.com, an online consumer electronics marketplace unrelated to Intel, and when

3

counsel bought that Intel-branded processor on Newegg.com, *it was "[s]old and [s]hipped by GH ELECTRONICS."* ECF No. 29-3 at 3. Plaintiff's counsel's online shopping proves why Intel is not subject to specific jurisdiction here.

## II.    THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS SUIT.

Intel argued that Plaintiff suffered no Article III injury (1) because his asserted injury rests on the false premise that he was personally prevented from completing a transaction on a website that does not permit that transaction for anyone, Mot. 18-19, and (2) because he has not identified any location on Intel's website that caused his asserted injury, *id.* at 19.

As to the first argument, Plaintiff fails to respond to the evidence that no processor can be purchased on Intel's website. The Court therefore has no reason to credit Plaintiff's claim that "future injury is imminent" because he intends to "acquir[e] identified products and tak[e] advantage of seasonal promotions," Opp. 12-13 (capitalization omitted). There is no mechanism on Intel's site for Plaintiff to "acquir[e]" processors or "tak[e] advantage of seasonal promotions."

Perhaps recognizing that he alleges no concrete and particularized injury, Plaintiff pivots to a new theory premised on a purported "informational barrier." Opp. 11. This new theory fails for two reasons. *First*, that is not what Plaintiff pleaded. His claimed injury is the inability to *buy* processors on Intel's website, not an inability to *read* about them. *See, e.g.*, FAC ¶ 40 ("attempted to purchase"); *id.* ¶¶ 43-44 ("blocked from the entire purchase process"; "purchase could not occur"); *id.* ¶ 49 ("encountered specific barriers ... while attempting to buy identified products"). Courts routinely reject such *post-hoc* rationalizations. *See Red Fort Cap., Inc. v. Guardhouse Prods. LLC*, 397 F. Supp. 3d 456, 471 (S.D.N.Y. 2019) (rejecting attempt to "interpose" "a new legal theory in opposing a motion to dismiss"); *Maione v. McDonald*, 2025 WL 2676591, at *3 n.5 (S.D.N.Y. Sep. 18, 2025) ("law is clear" that plaintiff cannot supplement pleading via briefing).

4

*Second*, the Second Circuit has rejected the "informational harm" theory Plaintiff now seeks to assert.[2]  In *Harty v. West Point Realty, Inc.*, the court held that a plaintiff alleging informational injury under the ADA "must also allege 'downstream consequences from failing to receive the required information' in order to have an Article III injury in fact."  28 F.4th 435, 444 (2d Cir. 2022) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 442 (2021)); *see also Laufer v. Ganesha Hosp. LLC*, 2022 WL 2444747, at *2 (2d Cir. July 5, 2022) (same).  Plaintiff states unequivocally his "definite" intention to *purchase* specified products—i.e., *regardless* of the substance of any accompanying *information*.  FAC ¶¶ 40, 48.  There are therefore no "downstream consequences" from his supposed informational injury.  "'[I]nformational harm,' without any downstream effects," cannot "suffice[] for Article III injury purposes."  *Laufer*, 2022 WL 2444747, at *2.

As to Intel's second argument, Plaintiff ignores the issue Intel raised—his failure to identify any URL that "directly prevented [him] from completing transactions."  *See* Mot. 1-3, 6-11, 19.  He offers no response to Intel's authority, Mot. 18-19, and his cases, Opp. 11, do not help him.  *Kreisler v. Second Avenue Diner Corp.* is inapposite as that case involved an "obvious" and "concrete" *physical* barrier.  731 F.3d 184, 186-88 (2d Cir. 2013) (per curiam).  And in *Harty v. Greenwich Hospitality Group LLC*, the Second Circuit affirmed dismissal for lack of standing precisely because the alleged threatened future injury was *not* sufficiently concrete.  536 F. App'x 154, 155 (2d Cir. 2013).  Unless Plaintiff can identify a page on Intel's website containing a "checkout workflow" that he was unable to use—and he plainly cannot, *see* ECF No. 27-6 ¶¶ 4-9—

---

[2] Plaintiff cites *Fernandez v. Vanilla Chip, LLC*, 2025 WL 1151475 (S.D.N.Y. Apr. 18, 2025), and *Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381 (E.D.N.Y. 2017).  Opp. 11.  Neither case addresses the sufficiency of "informational injury" for standing.  In *Fernandez*, the plaintiff's injury arose from her *inability to buy* a product, 2025 WL 1151475, at *3, and *Andrews* did not address Article III standing, 268 F. Supp. 3d at 381.

5

his alleged past injury and future threatened injuries are "hypothetical" and "abstract." *TransUnion*, 594 U.S. at 423.

These deficiencies are compounded by the boilerplate nature of Plaintiff's allegations. *See* Mot. 19 n.12. Plaintiff offers no response to Intel's observation that his pleading is materially identical to *Simmons v. Pilot Corp. of America*, No. 1:25-cv-10157 (S.D.N.Y.). *See* Mot. 9, 19. Perhaps the false allegations here are meritorious in *Simmons*; Intel does not know. But contrary to Plaintiff's suggestion, *see* Opp. 13, Intel did not reference *Simmons* to challenge the "volume of suits" Plaintiff or his counsel has brought. Intel noted *Simmons* because the identical allegations there about "checkout workflows," etc., help explain those allegations appearing here even though they are utter falsehoods. *See* Mot. 19 n.12. The Court may consider such "broader context" in assessing Plaintiff's standing. *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 77 (2d Cir. 2022).

## III.    INTEL'S WEBSITE IS NOT A PUBLIC ACCOMMODATION.

As the Court has observed, the Second Circuit has not resolved whether "a stand-alone website unconnected to a bricks-and-mortar location qualifies as a place of public accommodation" under the ADA, and courts in this District are divided. *Sumlin v. New York Beer Co., LLC*, 2025 WL 1703067, at *3 (S.D.N.Y. June 18, 2025); *see also* Mot. 20-21; Opp. 13-14. The better reading of the statute is that standalone websites offering goods and services for purchase do not fall within the ambit of the ADA—let alone Intel's website, which does *not* offer processors for sale.

The relevant section of the ADA provides a list of "private entities [that] are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce." 42 U.S.C. § 12181(7). Intel's website cannot be reasonably included in any

category.[3]  Plaintiff states that "[t]he text of § 12181(7) is illustrative, not exhaustive."  Opp. 15.

But while the examples *within* each category may be illustrative, the set of categories is exhaustive.

As Plaintiff's cited authority (Opp. 14) notes, those categories are "an 'exhaustive list.'"  *Lopez v.*

*Arby's Franchisor, LLC*, 2021 WL 878735, at *5 (S.D.N.Y. Mar. 8, 2021); *see also Fernandez v.*

*Gainful Health, Inc.*, 2025 WL 3538339, at *1 (S.D.N.Y. Dec. 10, 2025) ("The ADA defines

'public accommodation' by listing twelve exhaustive categories of establishments that qualify.").

The Department of Justice puts it plainly: "Can a facility be considered a place of public

accommodation if it does not fall under one of these 12 categories? *No, the 12 categories are an*

*exhaustive list.*"  U.S. Dep't of Just., ADA Title III Technical Assistance Manual § III-1.2000

(1993), https://www.ada.gov/resources/title-iii-manual/ (emphasis added).    Plaintiff's own

characterization reinforces that Section 12181's repeated references to "place[s]" and

"establishment[s]" presume a physical location.  *See* Opp. 15 ("ADA enumerates ... 'service

*establishment[s]*,' 'sales ... *establishment[s]*,' and 'other *place[s]* of public ... display or

collection'" (emphases added)).

Plaintiff devotes nearly a page to a string cite of cases holding that a standalone website

may be a public accommodation.[4]  Opp. 14.  But this "long line," *id.*, is illusory.  Those decisions

---

[3] Some courts analyzing websites have focused on the clause "other sales or rental establishment" in Section 12181(7)(E).  *See, e.g.*, *Del-Orden v. Bonobos, Inc.*, 2017 WL 6547902, at *8 (S.D.N.Y. Dec. 20, 2017) (cited Opp. 14).  Intel submits that a website with no bricks-and-mortar operation cannot be a "sales or rental establishment" under Section 12181(7).  *See Winegard*, 556 F. Supp. 3d at 178-79 (residual clause must be read in light of specific list it follows).  But even if the Court disagrees with that general principle, *Intel's* website does not offer any processors for sale (or rent).  That is, the question of whether a specific website is a public accommodation must examine not only whether an internet site with no accompanying bricks-and-mortar facility may fall within the scope of Section 12181(7) as a general proposition, but also whether "goods and services" are offered for sale at that particular website.  *Cf. Sumlin*, 2025 WL 1703067, at *3.

[4] Contrary to Plaintiff's assertion (Opp. 14), *Lopez* did not "hold[] that standalone websites are public accommodations under Title III."  *Lopez* addressed whether "*gift cards* are places of public

all rely directly or indirectly on *Pallozzi v. Allstate Life Insurance Co.*, 198 F.3d 28 (2d Cir. 1999). Yet even Plaintiff's lead case recognizes that *Pallozzi* "is not directly on point," *Fernandez v. Vanilla Chip, LLC*, 2025 WL 1151475, at *5 (S.D.N.Y. Apr. 18, 2025), and this Court has acknowledged the same, *Sumlin*, 2025 WL 1703067, at *3 ("*Pallozzi* did not hold that websites are places of public accommodation.").

The defendant in *Pallozzi* refused to issue an insurance policy, and the question was whether "insurance policies ... qualify as goods or services 'of a place of public accommodation.'" 198 F.3d at 30-33.  That is, the question was "not ... the antecedent question of whether a place of accommodation can be a business without physical premises." *Sookul v. Fresh Clean Threads, Inc.*, 754 F. Supp. 3d 395, 407 (S.D.N.Y. 2024).  The Second Circuit held that Title III "regulate[s] the sale of insurance policies *in insurance offices*." *Pallozzi*, 198 F.3d at 33 (emphasis added). The court held that "an entity covered by Title III is not only obligated by the statute to provide disabled persons with physical access, but is also prohibited from refusing to sell them its merchandise by reason of discrimination against their disability." *Id.* at 32-33.  *Pallozzi* simply does not answer whether Intel's website is a public accommodation under the ADA.  *See Winegard*, 556 F. Supp. 3d at 180 ("*Pallozzi* does not compel an outcome at odds with the plain-text reading[.]").  "[T]here is simply no place for [Intel's] website anywhere in the text of Section 12181(7)," and "places of public accommodation do not extend beyond physical locations to standalone websites." *Sookul*, 754 F. Supp. 3d at 407, 413 (noting that courts have "overread *Pallozzi*").[5]

---

accommodation under the ADA," and concluded that they are not.  2021 WL 878735, at *5 (emphasis added).

[5] Plaintiff also appears to argue that Intel's website *is* tethered to a bricks-and-mortar location because Intel's website "routes customers" to retailers "that operate physical and online sales establishments."  Opp. 16.  His apparent view is that a website hyperlink to the website of *a*

## IV.   IN THE ALTERNATIVE, THE COURT SHOULD DECLINE SUPPLEMENTAL JURISDICTION OVER THE STATE-LAW CLAIMS (COUNTS II-IV).

If the Court finds that Intel is not subject to personal jurisdiction on Plaintiff's ADA claim, the same analysis precludes his state-law claims stemming from identical facts. If the Court finds that it has personal jurisdiction over Intel on the claims in this case, it should dismiss all claims under Rule 12(b)(6) because Intel's website is not a "public accommodation," as all claims are premised on that legal conclusion. Mot. 20 & n.13.[6] In the alternative, though, the parties agree that the Court properly may decline supplemental jurisdiction over the state-law claims if it dismisses the ADA claim alone. *See* Mot. 22-23; Opp. 17.

## V.   THE COURT SHOULD DISMISS THE CLAIM FOR DECLARATORY RELIEF (COUNT V).

Plaintiff does not dispute that if he lacks a substantive claim, he has no basis for declaratory relief. *See* Opp. 17-18. He states no substantive claim, so the Court should dismiss Count V.

---

*different company* with a physical storefront renders the *first* website a public accommodation. Plaintiff identifies no authority endorsing that extreme proposition; the cases he cites, *id.*, held that Target and Domino's websites were public accommodations because of the nexus to *Target stores* and *Domino's stores*. *Nat'l Fed. of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 955 (N.D. Cal. 2006); *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 905 (9th Cir. 2019).

[6] Opposing this outcome, Plaintiff cited a non-existent case as "analyzing NYCHRL's broader 'provider' language." Opp. 17 (citing "*Mejia v. T-Mobile USA, Inc.*, 2024 U.S. Dist. LEXIS 33148"). Yesterday, Plaintiff filed a "corrected" brief, *see* ECF Nos. 30, 31, which did not fix the problem. *First*, the "correction" now says Intel "relies primarily" on *Sullivan v. BDG Media, Inc.*, 71 Misc. 3d 863 (N.Y. Sup. Ct. 2021), which Intel never cited. ECF No. 31 at 15; Mot., *passim*. *Second*, while *Sullivan* states that the NYCHRL is construed more broadly than the NYSHRL, it offers no reasoning for that point and does not (as Plaintiff asserts) analyze the statutory text. *See Sullivan*, 71 Misc. 3d at 871. *Third*, all claims were *dismissed* in *Sullivan* because that plaintiff (like Plaintiff here) nowhere alleged "that he sought and was denied" changes to the website at issue. *Id. Finally*, the NYCHRL's "provider" language does not alter the analysis because Intel's website is not a "public accommodation" at all. *See* Mot. 20.

9

## VI.     THE COURT SHOULD DISMISS WITHOUT LEAVE TO AMEND.

Plaintiff concludes by requesting leave to amend or to take jurisdictional discovery "should the Court find any pleading deficiency." Opp. 18. But Intel's arguments rest on uncontroverted facts. Plaintiff cannot have been denied a right to buy processors on Intel's website because Intel does not sell processors there. Mot. 4-11. Plaintiff has known this since, at latest, January 2026. ECF No. 27-2 at 2; *see also* Mot. 8-11. Yet after that (and after Intel moved to dismiss), Plaintiff retained these falsehoods in his amendment, adding nothing more than made-up phrasing about "purchase pathways" and "transactional gateways." *See* Mot. 7-8. Leave to amend is properly denied where a plaintiff has "repeated[ly] fail[ed] to cure deficiencies" or where amendment would be futile. *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008); *Mortimer Off Shore Servs., Ltd. v. Federal Republic of Germany*, 615 F.3d 97, 113 (2d Cir. 2010). Here, both are true.

The Court also should not authorize jurisdictional discovery, for the same reason—discovery cannot change the conceded lack of transactional functionality on Intel's site. Moreover, Plaintiff has come nowhere near justifying discovery. A party seeking jurisdictional discovery "bears the burden of showing necessity." *Molchatsky v. United States*, 778 F. Supp. 2d 421, 438 (S.D.N.Y. 2011), *aff'd*, 713 F.3d 159 (2d Cir. 2013). Plaintiff's perfunctory request, Opp. 18, falls well short. His generalized request is nothing more than "an unfounded fishing expedition for jurisdictional facts." *Nationwide Mut. Ins. Co. v. Morning Sun Bus Co.*, 2011 WL 381612, at *10 (E.D.N.Y. Feb. 2, 2011); *see also Herlihy v. Sandals Resorts Int'l, Ltd.*, 795 F. App'x 27, 30 (2d Cir. 2019) (district courts have broad discretion to deny jurisdictional discovery). Because Plaintiff "fails to allege facts that would support a colorable claim of jurisdiction or identify a genuine issue of jurisdictional fact" to be determined through discovery, the Court should deny his request to "use the court processes to attempt to find support for having commenced the litigation."

10

*901 Props., LLC v. Bernstein-Burkley, P.C.*, 2026 WL 1283532, at \*7 (S.D.N.Y. May 11, 2026)

(citation omitted).

## CONCLUSION

The Court should dismiss without leave to amend.

Dated: June 25, 2026

Respectfully submitted,

*/s/ David S. Kurtzer-Ellenbogen*
David S. Kurtzer-Ellenbogen
James J. Kim (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
   650 Fifth Avenue, Suite 1500
   New York, NY 10019
   (202) 434-5000
Email: dkurtzer@wc.com
      jkim@wc.com

*Counsel for Defendant Intel Corporation*

11

## CERTIFICATE OF COMPLIANCE

I hereby certify that this memorandum of law does not exceed 3,500 words and, thus, complies with Local Civil Rule 7.1(c). The total number of words contained in the foregoing brief, exclusive of the caption, table of contents, table of authorities, signature block, and this certificate, but including footnotes, is 3,462 words. In preparing this certificate, I have relied on the word count of the word-processing program used to prepare this brief.

/s/ *David S. Kurtzer-Ellenbogen*
David S. Kurtzer-Ellenbogen

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2026, I caused the foregoing to be filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all registered participants.

/s/ *David S. Kurtzer-Ellenbogen*
David S. Kurtzer-Ellenbogen